1850144 Esteban Garcia v. Professional Contract Svc Inc 1850144 Esteban Garcia v. Professional Contract  Services Company for a period of 10 years before his termination. Appellant brought this action for retaliation under the False Claims Act 28 U.S.C. section 3730 sub h1 after he was terminated for engaging in whistle blowing activity reporting suspected fraud to the government. Appellant appeals from the order of the district court granting summary judgment in favor of issues of material fact. My client raises two issues on appeal. The first, did the district court apply the wrong standard in evaluating the evidence submitted in support of my client's claims? And secondly, did appellant meet his burden of establishing a genuine issue of material fact such that respondents motion should have been denied? Appellant's brief spells out why the answers to both of these questions is yes and I would like to take this opportunity to discuss these issues further. First, with regard to the standards, as noted by this court in U.S. X. Rel. King Solve Pharmaceuticals, this court applies the McDonnell-Douglas framework for False Claims Act anti-retaliation claims. Under this framework, the plaintiff has the initial burden of establishing a prima facie case of retaliation. This is done by showing first, that the plaintiff engaged in protective activity. Second, that the defendant knew about the activity. And third, that the defendant retaliated against the plaintiff because of the protected activity. If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to set forth a legitimate, non-discriminatory reason for its decision. Once the defendant, if the defendant is able to do that, the burden then shifts back to the plaintiff to demonstrate that the defendant's reason is actually a pretext for retaliation. Now here, the district court relied on Solve as the basis for its application of a but-for standard to the third prong of the appellant's prima facie case. That respondent retaliated against a plaintiff, excuse me, against the appellant because of his protected activity. And this was there. If you look at Solve, Solve applied the but-for standard to the third prong of the case. In its analysis, that the burden had shifted back to the plaintiff after the defendant stated that the plaintiffs were terminated for creating unapproved marketing materials, and the plaintiffs admitted violating the defendant's marketing policies. So in Solve, the court was actually discussing the but-for standard on this third prong because it already passed through the prima facie showing. So you don't need to do the but-for twice in the prima facie and if you can, it's sort of a friendly question. No, that's our argument, Your Honor, and this court has in fact looked at this and separated the two in a couple of different circumstances. And if you were to, I just mentioned, if you were to do that, then this but-for standard kind of swallows the whole McDonnell-Douglas. You don't ever do McDonnell because it's just but-for, but-for. Exactly. Did you make all the arguments that are in your brief for pretext in the district court? Yes, we did, Your Honor. There are two arguments that weren't set forth specifically in the pretext argument in our opposition, but they were addressed and discussed in the brief, and that is, one, the fact that prior to my client being given his final disciplinary action report requiring him to go back and look through his contracts, he had already disclosed the two issues with regard to job site 660, which was the basis for respondents' proffered nondiscriminatory reason to terminate my client. And that's discussed in the brief at, I apologize, I have it here. The record site is ROA 2965, paragraph 12, and ROA 2715, line 11 through 2716, line 18. The other is the argument that my client was harassed by Keith Walker after he engaged in a whistleblowing conduct on April 24, 2013, and that's set forth in the record. I have it here. It's ROA 2695, line 13 through 2697, line 6, and then 2751, line 16 through 2752, line 13. So the other two, there's a couple of other cases where this court has actually distinguished between the prima facie showing and the subsequent analysis regarding pretext in which the court applied that but-for standard. So although the court has not expressly held one way or the other, it has in fact said that under the third prong, the pretext prong, we're going to use this but-for standard, having already gotten through the prima facie case. That was Solvay for one example. Another example is Strong versus University Hospital, 482 F3rd 802. And in that case, the defendant, like the respondent here, an oral prima facie case had been met. Mr. Feasby, in your view, has our case law in this circuit definitively weighed in on one side or the other, this circuit split? Well, the court has not come out and said we are going to adopt this rule, but the way that the court analyzed this issue in Solvay and Strong versus University Hospital, and even in Shackleford, indicates that there is a strong, the defendant in the lower court had conceded that there was a prima facie case, and then the court went on to then look at pretext, and it distinguished between the standard for prima facie and for the but-for standard, and said because Strong cites and relies on the prima facie causation standard, she does not actually argue that she meets the but-for standard. So the court's two separate standards. The prima facie case being just that, putting forth enough evidence to shift the burden to the defendant. Maybe we've implicitly done it without explicitly saying so. Yes, Your Honor, I think that's the case. And for the court, the district court, to rely on Solvay as holding that the but-for causation standard applies to the accurate interpretation or application of that case. Finally, in Shackleford versus Deloitte and Touche, 190 F3rd 398, the court found that the plaintiff met her burden of establishing a prima facie case due to the temporal proximity of her protected conduct and her termination. And that's what Respondent's Counsel in this case discussed during oral argument in front of the district court and said, well, we've got this temporal proximity and that's enough for the prima facie case. And other cases are in accord with this Shackleford case that say that's all that's required on this initial step. If you want to show but-for causation on the pretext, you have to show significantly additional evidence in order to get over that hurdle. So in Shackleford, after the burden shifted back to the plaintiff to show pretext, the court said that she would have to show that she had not been fired but-for engaging in her protected conduct. These cases, again, support the conclusion the but-for standard of causation does not apply to a prima facie case under McDonnell Douglas, but to the pretext. And I think this case presents an excellent opportunity for the court to definitively establish that rule in this circuit. Can you discuss some of the timing issues that you're opposed to? Council spends a lot of time on their briefing about. The timing issues, so there's two, a couple of different timing issues. I'll address kind of the first one first, and that is when did the whistleblowing conduct occur? And then as a result of that, what could be the retaliatory conduct? And as we've set forth in our reply brief, there are instances in 2011-2012 where my client reported that certain cleaning was not going on, specifically with regard to the parking lots at Job 560. And we're not presenting that as evidence of whistleblower conduct. That goes to show that Eric Rodas was a comparator or a similarly situated individual, and it goes to his history of work violations. For purposes of the appeal, we have the April 24, 2013 email to NISH or Source America that was subsequently forwarded to Mr. Barbosa, and then the subsequent discussions that my client had with Ms. Robinson, who's the general counsel for Source America. What happens about the fact that the final warning was on April 9th, and it's in bold in their brief? Right. So that is the case, but there's a couple of issues with that that it's certainly not dispositive. That's just one of the pretext arguments. We have a bunch of other evidence going to pretext, which I would like to get to. But we have the disciplinary action report, and how that goes to pretext, then, is the my client was found to, given recommendations in terms of how he can be better accountable. And if you look at that warning, the written warning, it indicates that his performance in terms of managing jobs is excellent. The only criticism is that he sometimes isn't prepared for corporate meetings. My client testified that he discussed those issues with his supervisor, Keith Walker, and they were resolved. They were then carried down into the April 9th disciplinary action report, which was his final, quote-unquote, final warning. And he disputed that, not only the issues involving the November 2012 review, but he disputed the other issues that were set forth in that disciplinary action report as not being a valid basis for disciplining, and certainly not for disciplining. So when you're analyzing pretext, one of the things that the court in Shackleford looked at was the fact that the plaintiff in that case had contested the disciplinary action, which we have here with our client as well. And the subsequent actions that you have for pretext are the harassment by Mr. Walker. You also have the dissimilar treatment of my client and Mr. Rodas. And the court also erred in evaluating this portion of the test. The district court at ROA 3108 cites the Lee case, Lee versus Kansas City Southern Railroad, Railway 574 F3rd 253. And in that case, in dicta, the court states, generally, these list of things won't suffice for purposes of pretext. However, if you look at this other set of things, that might work. And so the court looks at this set of things that say, these generally don't work, and says, okay, one of those is that you have similar job titles or you're in similar divisions of the company, and Mr. Rodas and Mr. Garcia were in different divisions, so that closes the analysis. And that's simply not the case. The court in Lee, it's not defined as a test, but essentially it's a test. And if you look at the case at page 260, the court says, the employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared have held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories. And so you look at those three things to find out if they're nearly identical, and we've got the case where the court just says, oh, different divisions, because Mr. Rodas at that time had been shifted over to the hospital division. But if you look at the evidence, the duties for Mr. Rodas and for Mr. Garcia remain the same for Mr. Garcia as a senior operations manager, and Mr. Rodas is in his position as the medical director. And there's testimony from Mr. Rodas in particular, and he discusses this specifically and says, yes, the duties remain the same. And that's at ROA 2636, line 18 through line 24, as well as 2832, line 20 through 2833, line 6. So it's your position that there's a fact issue on whether that he's a proper comparator similarly situated? Absolutely, because I think the court did not go through that analysis as it needed to. The other examples that we cite to with regard to Mr. Rodas include the fact that they did have the same supervisor in Keith Walker, and that they had comparable work history violations. And so we have an instance here which, going to your timing question, Your Honor, is somewhat interesting in that initially Mr. Rodas was not given any sort of disciplinary written warning related to the fact that job 560 hadn't been cleaned. And if you look at the evidence we submitted in the declaration of Mr. Morota, he says he conducted an investigation to determine when it was that job 560, location 6, stopped being cleaned, and determined it was almost at the outset. And that was done at the direction of Mr. Rodas, and in fact the customer in that case had taken the key away from location 6. So it hadn't been cleaned for years. So Mr. Rodas was the one initially who was responsible for the the fact that location 6 wasn't being cleaned, and he's not given a warning. Then subsequently after my client engages in his whistleblowing conduct on April 24th, Mr. Rodas is in fact given a warning, and it's not anything to do with the fact that he failed to properly supervise 560 when he was the manager. It had to do with transitioning the contract to my client. So we maintain that that's also an additional indicia of pretext in that they're creating this after the fact, so they have a paper trail now to show, okay, we're not singling out Mr. Garcia who's engaged in this whistleblowing conduct. If you look at our papers, we state extensively the work violations that Mr. Rodas had leading up to my client's termination, which was based on the job 660. Mr. Rodas had also experienced similar lapses in supervision of contracts. And I'll reserve the rest of my time. Thank you. Thank you. Thank you. We have your argument. And you've reached your time for rebuttal. Good morning, and may it please the court, opposing counsel. My name is Shafiqa Giratani, and I am pleased to represent the appellee defended in this case, Professional Contract Services Incorporated, or PCSI. As your honors know, PCSI is a nonprofit in Central Texas. What it does is it specifically federal contracts such as custodian and grounds maintenance on government properties. This is a straightforward case of the burden of proof on causation. Mr. Garcia simply did not present evidence to meet the burden of proof but for to the lower court, whether that's at the prima facie stage or the pretext stage. His very own admissions, in short, talk him out of proof on the but-for causation. Can we deal with this, first of all, the prima facie? Absolutely, your honor. You believe it's our law in this circuit that you have to do the but-for at the prima facie? Well, your honor, what we believe is at this point has not been established by this court. What if we continue to require the prima facie? So you think it's open, is your  If we have examples of cases where we continue to apply the but, I mean the prima facie, without the but-for post Nassar, and we have a number of those cases, wouldn't that tell us that we actually don't do the but-for as part of the prima facie? I would disagree, your honor. The cases that the plaintiff has cited, Mr. Garcia, are really all talking about the pretext stage. When we look at the Solveig case that they have cited, that focuses on the pretext stage as opposed to the prima facie. When we also look at the other cases, the focus is on pretext. So there is no, and in fact what the Fifth Circuit has said at the latest of 2016, is that it has not been resolved in this circuit. What do you do with Hegemeyer? Hegemeyer v. Caldwell County. The Hegemeyer v. Caldwell County case? Maybe that's not in the brief. So I apologize for putting you on the spot. That may be some of my research. So that's okay. You don't have to answer. Okay. But I'd love to, your honor. Please tell me a little bit about that case. Let's just go on to something that you briefed, and so we won't plug you down there. Okay. But so did you waive the prima facie argument by saying all you have to show is proximity and time? No, your honor. That has not been waived. What specifically was said by Mr. Gregg is he recited what the Fifth Circuit has said on many occasions, which is that there can be, when there is very close proximity and time, you can never conceded it, and certainly the court never took it that way. Because I thought they said the only thing we're contesting is this. Isn't that mean that we're not contesting all this other stuff? No, your honor. Mr. Gregg never said the only thing that we're contesting. What he did say, and that's in the record at 3.197, is he recited the Fifth Circuit standard that very close proximity can, in some cases, he said, get you there in terms of prima facie retaliation. What the court has said time and time again is that in order to waive any argument, it must be clear what plaintiff's counsel has, what counsel has said, and certainly there was never, ever in the record Mr. Gregg saying that it has been waived. He was just reciting what the court has said. Let me get back to the prima facie case, if the court doesn't mind. I'd like to talk about that a little bit further, which is this, that the majority of other circuits, and we've cited them in our brief, the First Circuit with the case Garelli-Rios, the Third Circuit with the case Verma v. University of Pennsylvania, the Seventh Circuit with Skylarsky, the Eighth Circuit with Musilov, the Ninth Circuit with Campbell, the Tenth Circuit with Davis, the Eleventh Circuit with Sims, have all found that but for applies at the plaintiff, we believe that their reasoning makes much more sense than the minority of other circuits, and here's why. What the courts have always said is that the burden always stays with the plaintiff. We'd all know, and it has certainly been agreed, that the causation standard for retaliation is but for. It really makes no sense that the causation standard would be different at the prima facie stage. What would it be? Something like motivating factor, and then switch at pretext to but for. What's your response to, I think the reasoning of, maybe it's the Fourth Circuit, that if we apply the test that way, you're essentially eliminating the pretext part? You're doing, like Judge Alrod said, you're doing but for twice. Sure, that's the... Go ahead. But what that does is it really conflates an understanding of what the prima facie case is about versus the pretext stage. Remember, at the prima facie stage, this is all about proving a circumstantial case. How do we prove a circumstantial case? And what it's supposed to be is it's a lighter standard at the prima facie case, but you must prove all of the elements of your case. That's what McDonnell Douglas says in order to get to the part where the employer provides their defense, and then that can be rebutted. What has been conflated by, for instance, the Fourth Circuit is the idea that because there's a lighter standard at the prima facie stage, that that somehow means that but for causation is not the standard. Causation is always the standard. The evidentiary burden might be less. A lesser showing in perhaps quality and quantity of evidence at the prima facie stage. But we can't change what the causation standard is. The standard is the standard, and it remains throughout the case. In order to get to the part where the employer... Is that because of the statute? That's what the statute says? Because that's what the statute says. The statute says because of, which means it must be but for, throughout the case. And so to even get to the part where the employer provides their defense, the plaintiff has the burden as it always does to show they have got the elements of their case. It's a light showing at first, but there must be a showing of but for. Now, once we get to the later stage, remember pretext evidence is not simply causation evidence. It is rebutting what the employer has said. So it conflates what these two stages are in two ways. First, to say that just because there's a lighter burden, that that means that they're the same. It's always but for. And second, it conflates the idea that these are exactly the same types of evidence. They are not. One is simply but for in a vacuum. The second is rebutting what the employer said. And so those minority of circuits we believe are incorrect, and the Fifth Circuit should follow what the majority of circuits have said. Now, here, and I think importantly, regardless of what the court decides to do on the but for causation standard, we believe even under a lesser standard, certainly the prima facie case has been met here. Has been met here? Yes. You said has been met. Has not been met. Thank you, Your Honor. Now, Garcia himself admits that he would have been terminated anyway on multiple grounds, including his alleged disability, taking time off, his disagreement with management on how to implement new programs. That's the record at 832. When we have all of those admissions in the record of various reasons why Mr. Garcia himself says that there's not but for causation, the lower court properly found even under any standard that the prima facie case could not be met. Now, I'd like to talk a little bit about timing as the court pointed out. Before you do. Yes, Your Honor. This is relevant. Okay. Is this a misquote of the counsel at the hearing? The only thing Garcia has to show a causal connection is proximity and time. The Fifth Circuit says that up to four months could cause there to be an inference of proximity of causation from proximity and time. Here we're dealing with about 76 days. I think the proximity point gets them through the hearing. Did the person arguing on behalf of your client at the hearing, it wasn't you, was it? I didn't think so. Say that. Yes, Your Honor. I believe you're accurately reading from record site 3197. Yes. Yes. And what I would say to that is looking at all the context around that, that's simply a recitation of what the Fifth Circuit law is. That in some cases very close proximity can get you there. Now, here it does not because of all the admissions that I talked about negating but for causation. When you say there's all these other reasons, that's not enough. In addition, the fact that Mr. Garcia admits the circumstances leading to his termination. And I'd like to talk about that in terms of the timeline. Now, an important date to keep in mind here is April 24, 2013. Mr. Feasby's opposing counsel agreed that's the first date of any protected activity. Now, importantly, this isn't a case of a good performer who after a complaint somehow we call a bad performer. It's undisputed here that all before the first edge of termination. And when we get to the pretext evidence in a moment, you'll notice that all of that evidence, Your Honors, deals really with things that happened before Mr. Garcia even complained. I'd like to point out something else to the Court. The decision maker in this case is Carol Schubert. That's undisputed. Anything that's not tied to Mr. Schubert who really made the decision about Keith Walker, that was Mr. Garcia's direct supervisor. He did not make the decision to terminate. If he did not make the final decision, did he give input to the decision maker at any time about the performance issues that form the basis for the performance reviews? There is nothing in the record that he influenced the decision, Your Honor. Not just the ultimate decision, but also the leading up to decisions by the performance reviews. Well, Your Honor, and that's an important point to make, remember all of the leading up to decisions, including that negative performance evaluation as well as the DAR, cannot be retaliatory because they're all before April 24, 2013. Those are not subject to attack. So regardless of what type of things that Mr. Walker did with regards to negative performance evaluation or that DAR, they're not retaliatory, admitted, because prior to the complaint. Can you help me about whether or not the saying that he had mentioned that they hadn't been cleaned before that, right? So it wasn't, so he had revealed that. And isn't that part of leading up to the complaint? It's not yet saying, well, it's a big scam because you're taking money, but it's noting the factual predicate for the whistleblowing. Well, Your Honor, what the record states about that, I'd like to point out a few things. Number one, that's evidence about Keith Walker, not Carol Schubert. But Keith Walker wrote those or helped write those performance reviews, right, that were negative, that put him on the razor's edge. The razor's edge, though, is all non-retaliatory. That's why the timeline is crucial here.  You're on the razor's edge all after the protected activity. But here, we're on the razor's edge all before the protected activity. Well, that's what I'm trying to test that proposition. Because the protected activity was not perhaps all just the final report where he said, this is whistleblowing, but tipping people off that he knew that that had not been cleaned. And that that's the factual predicate for then tying two together saying that we're getting money for this contract and we shouldn't. So it's part of the whistleblowing, but it's not yet, it's leading up to it. It's revealing the facts to the people who would be in the know. And so they're, aha, he's going to find us out kind of thing. That's the story we have to take for now. I understand, Your Honor, that argument was never, ever made below. What was said, and it was just said here by Mr. Feasby, is April 24th, 2013, is the date. And I'd like to point out, that's always what it has been at the lower court level. Your Honor, if we look at what the court said. So they didn't make that argument? They did not. They never said that the protected activity was this idea of tipping off on Job 660. No, Your Honor. What they said in their petition at Record 19 was the first time, was April 24th, 2013. What they said in their discovery responses at 2915, 2916, was April 24th, 2013. What they said in their deposition at Record 279, Record 2669, was April 24th, 2013. Importantly, what they said in their MSJ briefing, specifically, plaintiffs first reported his suspicions of fraud on April 24th, 2013, Record 2575. Everything before April 24th, 2013, is non-retaliatory. That's all the things that Keith Walker did with regards to that negative performance evaluation and the DAR. Keith Walker's wrapped up. Assuming arguendo that, and I'm obviously going to go back and check, and they may have waived this point. But assuming arguendo they did not waive this point, Keith Walker's mixed up in it, right? So if those are tipping off about the contract, then his retaliatory comments would be part of the conduct that we would consider. I would say, first, absolutely he is not. He's not mixed up in it at all? He's not part of the termination? There's absolutely no activity? By termination, I'm talking about the things before his retaliatory activity? I'm talking about the alleged fake payments for the fake jobs. Is he in the mix of that? For the adverse employment action, Your Honor? Or is he in the mix for? Is he in the know and on the hook in some way about that they're doing this contract? I'm not saying it's true. I understand. Such that he would have a motive to write down Mr. Garcia? No, Your Honor. He's not in the mix of that, I would say. And really what the record says, Your Honor, is that Mr. Garcia actually says that he believed that these were all being cleaned. When he was asked, this is at the record 9-21, and you understand it was your responsibility to make sure there was full compliance with the contract. He says, as far as I knew, there was full compliance with the contract. And so what the record shows, Your Honor, is that what was believed by Mr. Garcia was that there was full compliance with the contract. What's also important here is that if there was not full compliance with his contract 6-60, Mr. Garcia admits he's the one that should have gotten that corrected or made sure that there was no charge. That's in the record at 9-20. Now let me spend the rest of my time going through these few pieces of pretext evidence. Can you distinguish Shackelford? I bet you can do that while you're going through the pretext. I sure can, and I will. Basically the pretext evidence that they come forward with is a mimic of Shackelford. Now Shackelford's different because the negative performance evaluations came after the protected activity. So it's different and it's not on the razor's edge like we have here. Also the evidence that they point to with regards to a dispute of the negative performance evaluations, remember those are after the protected activity. Here it is not. So it's not retaliatory. What the Fifth Circuit has said time and time again is that just because you disagree with an employer's assessment of your performance, that's not pretext. You have to show, and what it says in the case of Little is management does not have to make proper decisions, just non-retaliatory ones. That's important because if these pieces are non-retaliatory based on the timeline, it doesn't matter that he disagrees with them, unlike in Shackelford, because that just means he doesn't like what his employer did. We're talking retaliation, not a disagreement with performance assessment. Let me spend a moment on Mr. Rodas. That's their other evidence. And I'd like to say these issues of Garcia disputing his final warning and Rodas as a comparator are both evidence that relates to things prior to April 24, 2014. The evidence about Mr. Rodas is all about whether he got a disciplinary action form based on this job 560. The final warning comes before April 24, 2014. And whether or not what the discipline related to that is all prior to the protected activity. So it can't be retaliatory. This court has said in Lee that you look at the time of the adverse employment action at issue. The only adverse employment action at issue here is the termination. At that time, everything that had happened about Rodas, the final warning had already happened prior to protected activity. So it simply does not make him a proper comparator. There's two other pieces of evidence that's offered on pretext. First is about the access issue to job 660. We already talked about that at length. And it deals with Keith Walker and not the decision maker. The last piece is that Mr. Garcia says he was harassed again by Keith Walker, not by the decision maker. And the evidence also shows that he specifically says that that has to do with his disability, nothing related to retaliation. There just simply isn't but-for causation here. The court promptly found that both at the prima facie stage and at the pretext stage. And the court can affirm on either basis. And we ask that. Thank you. Thank you. You may proceed with your rebuttal argument. Thank you. Your Honor, you did highlight for me the transcript that I was referring to with regard to the waiver. With regard to the prima facie case, I'm a little bit confused because counsel argued that there should be a but-for test for the prima facie case and for pretext. But the but-for case for prima facie sounds like it would be different than the but-for for pretext in that the prima facie case could be satisfied by showing simply temporal proximity. And I would submit that it's either a but-for test or it's not. The court has indicated, I believe it's in the long case, what must be in order to satisfy that burden. It's long versus Eastfield College, 88F 3rd, 300, 1996 case. Do you think the test is dispositive here? Well, I think that it is. So if we go with the modern trend, you lose? Oh, I'm sorry, no. I misunderstood your question. That's my question. No, I'm sorry, no. No, I don't think that's the case at all. For the same reasons that we don't think that they would prevail on the third prong of pretext in front of the district court. See, they think they win either way. Yes. You understand that, okay. Right, and that's the same thing that you and I discussed earlier, where if you're using a but-for test at the prima facie case, you don't need it at the end because it's all the but-for test. So they think we lose. How do you win a but-for test if Mr. Garcia admitted that these other things were fireable and then he did them? Because we have the other indicia of pretext here, which include, importantly, Mr. Rodas is a comparable actor. And when you're looking, if you're addressing a point that the counsel just made, when you look at the Lee case and you're looking back at prior negative history, the Lee case actually went back prior to the protected activity in that case because the basis for the termination were two prior warnings that he was given. In one case, the conductor missed a railway signal. On the other case, he didn't get permission to continue operating in the railway. Something to that effect. And so in that case, there was a similar actor who, going back that same period of time, had those prior instances of misconduct. At the time that the plaintiff, Lee, in that case was terminated, the other comparable actor was terminated but reinstated, which was a procedure that the company had. So there was disparate treatment there. But again, they looked back prior to the protected activity. The Lee case talks about the fact, and I'm out of time, may I have one extra minute? You may. The Lee case talks about the fact that it's the same supervisor. It doesn't talk about the same decision maker. Other cases say, well, if they don't have the same supervisor, if there is the same decision maker, then that is sufficient. Okay, you need to wrap it up now. Thank you. Okay. Thank you.